

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-23-2000

# United States v. Various Articles

Precedential or Non-Precedential:

Docket 00-5124

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Various Articles" (2000). *2000 Decisions.* Paper 226.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/226

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 23, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-5124

UNITED STATES OF AMERICA

v.

VARIOUS ARTICLES OF MERCHANDISE,
SCHEDULE NO. 287

ALESSANDRA'S SMILE, INC.,

     Appellant

Pursuant to Rule 12a

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 98-01559)
District Judge: Honorable Joseph A. Greenaway

Argued: Friday, September 22, 2000

BEFORE: SLOVITER, SCIRICA
and GARTH, Circuit Judges

(Opinion Filed: October 23, 2000)

       Eugene B. Nathanson (Argued)
       305 Broadway, Suite 200
       New York, New York 10007

       Counsel for Appellant

         Robert J. Cleary
         United States Attorney
         Steven D'Alessandro (Argued)
         Special Assistant U.S. Attorney
         Office of the United States Attorney
         970 Broad Street, Room 700
         Newark, New Jersey 07102

         Counsel for Appellee

OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal concerns 264 nudist magazines that were imported to the United States from France and Germany. The issue on appeal is whether those magazines are obscene and are therefore subject to seizure and forfeiture under 19 U.S.C. S 1305. The District Court found that the magazines were obscene and ordered their forfeiture. We hold otherwise and, therefore, reverse.

I.

On March 25, 1998, at the Customs international Mail Facility in Jersey City, New Jersey, United States Customs Inspector Robert Maloney ("Inspector Maloney") discovered a shipment of two large boxes addressed to Alessandra's Smile, 625 Broadway 7D, New York, New York, 10012. Inspector Maloney opened the packages and examined their contents. The contents of the boxes included, inter alia, 264 magazines, all entitled either Jeunes et Naturels or Jung und Frei (the "magazines"). The magazines, which are either in French or German, are devoted to nudists' lifestyles. All of the magazines contain numerous photographs of nude persons, including adult males and females as well as nude minors and nude teenagers.

Subsequent to Inspector Maloney's discovery, Special Assistant United States Attorney Steven L. D'Alessandro of the United States Attorney's Office for the District of New Jersey examined the magazines and determined that all

2

264 magazines were obscene. The magazines were then seized pursuant to 19 U.S.C. S 1305(a), which prohibits importation into the United States from a foreign country of "any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing,[etc.]" and subjects such articles to seizure and forfeiture.

The Government filed a Verified Complaint in the United States District Court for the District of New Jersey on April 7, 1998, alleging that the content of the magazines is obscene and that, therefore, the magazines are subject to seizure and forfeiture under 19 U.S.C. S 1305. Appellant Alessandra's Smile, Inc. ("Alessandra's Smile") filed a Verified Answer with the Clerk of the Court on March 17, 1999 and a claim for the return of its property.

On February 23, 1999, the parties stipulated to all the relevant facts but, without waiving their rights to appeal, left open for ultimate determination whether the seized materials were obscene. They also consented to the District Court entering a judgment without a hearing after the District Court had ruled. The parties agreed that the following books are regularly available for purchase within the jurisdiction of the United States District Court for the District of New Jersey: David Hamilton, The Age of Innocence; David Hamilton, Twenty-Five Years of an Artist; and Radiant Identities, Photographs by Jock Sturges. In addition, it is undisputed that Naturally Nude Recreation Magazine ("Naturally"), published by Naturally Nude Recreation, located in Newfoundland, New Jersey, is distributed within the jurisdiction of the United States District Court for the District of New Jersey.

The District Court entered an Order on December 30, 1999 stating that "the materials subject to the claim of Alessandra are obscene and were imported in violation of 19 U.S.C. S 1305 and shall be forfeited to the Government and destroyed." The District Court issued an Opinion supplementing the Order on February 22, 2000, in which the District Court discussed each prong of the obscenity test announced in Miller v. California, 413 U.S. 15 (1973), and determined that the magazines met all three prongs of the test. Alessandra's Smile filed a timely Notice of Appeal on February 24, 2000.

3

II.

Under Miller, "[t]he basic guidelines for the trier of fact" to determine whether a work is obscene and, therefore, subject to state regulation, are as follows:

> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

Miller v. California, 413 U.S. 15, 24 (1973) (internal citations omitted). We agree with the Second Circuit that all three prongs of the Miller test must be satisfied for a work to be found obscene. See United States v. Various Articles of Obscene Merchandise, Schedule No. 2102, 709 F.2d 132, 135 (2d Cir. 1983).

The first question we must answer is, what is our standard of review of the District Court's order?

In Bose Corporation v. Consumers Union of United States, Inc., the Supreme Court stated that "in cases raising First Amendment issues we have repeatedly held that an appellate court has an obligation to `make an independent examination of the whole record' in order to make sure that `the judgment does not constitute a forbidden intrusion on the field of free expression.' " 466 U.S. 485, 499 (1984). Therefore, though Rule 52(a) of the Federal Rules of Civil Procedure and, indeed, the Supreme Court and our own jurisprudence, see, e.g., Pullman-Standard v. Swint, 456 U.S. 273, 287 (1982); Levendos v. Stern Entertainment, Inc., 909 F.2d 747, 749 (3d Cir. 1990), instruct that a District Court's findings of fact "shall not be set aside unless clearly erroneous," Fed.R.Civ.P. 52(a), "[i]n[obscenity] cases, the Court has regularly conducted an independent review of the record both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected

4

expression will not be inhibited." Bose Corp. , 466 U.S. at 505.

In other words, when the fact finder, judge or jury, applies the Miller guidelines and determines that material is obscene, the appellate court must review the record independently to ensure that the determination does not violate the First Amendment. In conducting its independent review of a fact finder's determination of obscenity, an appellate court may not reverse the determination because it might have decided the case differently, as long as the determination of obscenity does not violate the First Amendment. As the Court observed in Miller,"[t]he mere fact juries may reach different conclusions as to the same material does not mean that constitutional rights are abridged." 413 U.S. 15, 26 n.9 (1973). Therefore, we are obliged to review independently the record to determine whether the District Court curtailed protected speech in its determination that the magazines were obscene.1

As we have stated, Bose Corp. established that appellate courts must conduct independent review of fact finders' determinations of obscenity to evaluate whether the determinations violate the First Amendment. However, the Court has not made clear precisely how this independent review applies to the three prongs of the Miller test. In Miller, the Court characterized parts (a) and (b) of the test as "essentially questions of fact." 413 U.S. at 30. However, in Jenkins v. Georgia, the Supreme Court read Miller to hold that part (b) of the Miller formula is nevertheless subject to independent appellate review. The Court noted, "[e]ven though questions of appeal to the`prurient interest' or of patent offensiveness are `essentially questions of fact,' it would be a serious misreading of Miller to conclude that juries have unbridled discretion in determining what is `patently offensive.' " 418 U.S. 153, 160 (1974). Indeed, in Jenkins, the Court, in its review, overturned the jury's determination that the film "Carnal Knowledge" was

_____

1. "[O]bscene material is unprotected by the First Amendment." Miller, 413 U.S. at 23 (citing Kois v. Wisconsin, 408 U.S. 229, 230 (1972); United States v. Reidel, 402 U.S. 351, 354 (1971); Roth v. United States, 354 U.S. 476, 485 (1957)).

obscene. In doing so, it said, "[o]ur own viewing of the film satisfies us that `Carnal Knowledge' could not be found under the Miller standards to depict sexual conduct in a patently offensive way," i.e., it could not, as a matter of constitutional law, be found to meet part (b) of the Miller test ("the work depicts . . . , in a patently offensive way, sexual conduct . . ."). 418 U.S. at 161.

As to part (c) of the Miller test, the Supreme Court observed in Smith v. United States that a fact finder's determination that a work "lack[s] serious literary, artistic, political, or scientific value" is "particularly amenable to appellate review." 431 U.S. 291, 305 (1977).

Therefore, instructed by the Supreme Court's teachings in Jenkins and Smith, we hold that we have an independent review of parts (b) and (c) of the Miller test. Part (a) of the Miller test ("whether . . . , applying contemporary community standards, . . . the work . . . appeals to the prurient interest"), on the other hand, is a particularly factual inquiry that does not, on its own, implicate the First Amendment.

Accordingly, we will review the District Court's factual findings under part (a) for clear error and exercise plenary review over its legal conclusions, and we will also exercise plenary review over the District Court's determinations with respect to parts (b) and (c) of the Miller test.

III.

As a preliminary matter and to dispose of an issue which, in the context of this appeal, we hold to be irrelevant, we turn first to the District Court's conception that the depiction of minors in the magazines affects the manner in which the Miller test is to be applied. Before applying the Miller test to determine if the seized magazines were obscene, the District Court stated:

> In this case, each of the two hundred sixty-four Magazines at issue contains numerous photographs of nude children and juveniles. This fact materially affects the manner in which the Miller test is applied. Indeed, as noted by the Third Circuit in United States v. Knox,

6

32 F.3d 733 (3d Cir. 1994), the Supreme Court relaxes the Miller obscenity test when pornographic material portrays minors, since the Government's interest in "safeguarding the physical and psychological well-being of a minor is compelling." . . . Although the Government is pursuing forfeiture of these materials on that basis that they are obscene, rather than child pornography, its ultimate purpose is no less compelling.

(Dist. Ct. Op. at 8-9.)

United States v. Knox arose out of a criminal action brought under federal child pornography laws. In that case, we considered whether videotapes which depicted children whose genitals and pubic areas were "always concealed by an abbreviated article of clothing," 32 F.3d at 737, could come within the purview of the federal child pornography laws proscribing a "lascivious exhibition of the genitals and pubic area." See 18 U.S.C. S 2256(2)(E).

In discussing the Miller test for obscenity and its application to the constitutionality of child pornography laws, we stated in Knox that government regulation of obscene materials is limited by the three-part Miller test. Regarding child pornography statutes, however, we noted that "[t]he Supreme Court allows the states and Congress greater leeway to regulate and proscribe pornography that depicts minors as distinguished from adults since the harmful effects suffered by a child are palpably more severe." 32 F.3d at 749; see also New York v. Ferber, 458 U.S. 747, 756 (1982) (holding that "the States are entitled to greater leeway in the regulation of pornographic depictions of children").

The District Court erred in interpreting Knox to mean that the Miller standard could be relaxed in cases such as the present case, where the magazines were seized under 19 U.S.C. S 1305. That statute provides for seizure of obscene materials, not seizure of child pornography. Significantly, in United States v. 12 200-Ft. Reels of Super 8mm. Film, decided the same year as Miller , the Supreme Court held that the Miller test should be applied in determining the constitutionality of seizure of materials

7

under 19 U.S.C. S 1305. 413 U.S. 123, 129-30 (1973) ("We have today arrived at standards for testing the constitutionality of state legislation regulating obscenity. See Miller v. California, ante, at 23--25. These standards are applicable to federal legislation.").

It is evident, therefore, that the issue of whether seizure of the magazines violated the First Amendment must be analyzed under the Miller test and not under a Knox child pornography standard. It is for the prosecutors, not the courts, to select those laws under which the Government brings actions, see, e.g., In re Richards, 213 F.3d 773, 782 (3d Cir. 2000), and we should not and will not analyze nor decide this case as if it were brought under child pornography laws -- which it was not. The magazines were seized as offending the obscenity statute, not as offending child pornography statutes. Accordingly, we must review the propriety of that seizure only under Miller .

A.

Part (a) of the Miller test asks whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest.2 The District Court answered this question in the affirmative.

At the outset, we observe that the District Court apparently believed that the magazines were intended for adults who desired to look at the photographs of nude children for their own "prurient interest." Hence, the District Court based its finding of prurience in part on the fact that warning labels are attached to two of eleven magazines (Exhibits A-K) submitted to the court for review. Those labels state that sale of the magazines is prohibited to minors. The labels, coupled with the small typefaces in the magazines and the magazines' overall layout and design, led the District Court to conclude that the magazines were intended for adults, not minors. The

_____

2. Prurience has been defined by the Supreme Court as "that which appeals to a shameful or morbid interest in sex." Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 504 (1985).

District Court also observed that, because the magazines are in French and German, not English, they are being targeted towards an American audience "focused . . . on . . . the relentless presentation of naked children and the exposition of their genitals." It also held that "the focus of these Magazines is the photographs, and not the text."[3] (Dist. Ct. Op. at 10-11.) Even if it were true that the magazines were produced and published for adult consumption, that fact does not dictate that they appeal to the prurient interest.[4]

Whether the magazines are targeted to minors or adults, to the extent that the photographs are of children, they are primarily focused on children's activities, not on the children's bodies. Children are shown swimming, boating, exercising, playing with beach balls, having picnics, swinging on jungle gyms, building sand castles, riding bicycles, playing guitar, riding horses, and playing such sports as tennis, volleyball, miniature golf, and baseball. The magazines depict nudist children in various geographical locations, such as Canada, Hawaii, Brazil, France, Denmark, Hungary, the Czech Republic, Russia, and Australia. We are of the firm conviction that the District Court clearly erred in finding that these magazines appeal to the prurient interest because they contain photographs of nudist children around the world engaged in activities typical of children.

A comparison of the seized magazines with the magazine Naturally, a nudist publication, reinforces our position. Naturally was among the exhibits ostensibly perused by the District Court but not claimed by the Government nor held by the District Court to be obscene. Admittedly with more

_____

3. Neither party furnished the District Court with translations of the textual material found in the magazines. The District Court centered its attention only on the photographs and illustrations. Because of the development of the District Court record in this fashion, we too limit our analysis to the magazines' photographs and illustrations.

4. Indeed, we do not understand the District Court's emphasis on the warning labels nor the importance that the District Court attributed to the magazines' readership. Neither would appear relevant to the analysis under the tripartite test of Miller v. California.

text and fewer photographs, Naturally also depicts nudists engaged in various everyday activities and features photographs of people at nudist resorts all over the world. Though Naturally does not have as many photographs of nude minors as the magazines at issue here, it does contain several photographs of nude children and adolescents. Naturally is sold in the District of New Jersey and, in fact, is even published in Newfoundland, New Jersey.

We have stated that "[a] finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is `left with a definite and firm conviction that a mistake has been committed.' " Oberti v. Board of Ed. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1220 (3d Cir. 1993); see also United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). After having looked at all the exhibits in evidence, we are indeed left with "a definite and firm conviction" that the District Court erred in finding that the magazines were obscene under part (a) of the Miller test. These magazines, as we have observed, no more appeal to the prurient interest than does the publication Naturally. Therefore, even though the "prurient interest" standard of Miller requires deference to the District Court in its fact-finding role, see United States v. Duliga, 204 F.3d 97, 100 (3d Cir. 2000), we hold that the District Court has committed clear error here.5

_____

5. Rule 52(a) of the Federal Rules of Civil Procedure provides, inter alia,
that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses." Fed.R.Civ.P. 52(a) (emphasis added). Here, of course, the District Court was not required to pass on the credibility of witnesses, as
no witnesses had been produced by either party. Rather, the record before the District Court consisted only of exhibits drawn from the 264 magazines that had been seized, three volumes of artistic photographs, and several issues of the magazine Naturally. Thus, the record before the District Court consisted of the exact same exhibits as those before us, and nothing more.

10

B.

We earlier called attention to our adherence to the requirement that all three prongs of the Miller test must be met before a work may be held to be obscene. See text supra, at p. 4. Having now determined that the District Court erroneously found, under part (a) of the Miller standard, that the magazines appealed to the prurient interest, we could stop at this point and reverse the District Court's December 30, 1999 order in favor of the Government. However, because of the nature of the subject matter on appeal and the fact that our decision has First Amendment implications, as well as the possibility that subsequent publications may be received in the United States and seized by the Government as obscene, we will complete our analysis under Miller. We thus turn to part (b) of the Miller test -- whether the magazines depict, in a patently offensive way, sexual conduct.

The Supreme Court emphasized in Miller that"no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive `hard core' sexual conduct." 413 U.S. at 27. The Court, recognizing the difficulty and the dangers of attempting to regulate any form of expression, gave a few examples of what a state statute could define for regulation under part (b) of the Miller standard:

> (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

> (b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

413 U.S. at 25. New Jersey has adopted this language, defining obscene material as material which "[d]epicts or describes in a patently offensive way, ultimate sexual acts, normal or perverted, actual or simulated, masturbation, excretory functions, or lewd exhibition of the genitals." N.J.S.A. S 2C:34-2(a)(1)(a).

The District Court concluded that the photographs found in the seized magazines depict "a lewd exhibition of the

11

genitals," which is "sexual conduct" as defined by the Supreme Court in Miller and by the New Jersey legislature, and that the depiction "is patently offensive to the contemporary community standards of this district." (Dist. Ct. Op. at 12.)

The District Court chose to use the six-factor test announced in United States v. Dost, 636 F. Supp. 828 (S.D.Cal. 1986),6 in determining that the magazines depicted "a lewd exhibition of the genitals." It did so because a 1989 Third Circuit case, United States v. Villard, 885 F.2d 117, 121-22 (3d Cir. 1989), had used the Dost test to interpret the meaning of the phrase "lascivious exhibition of the genitals or pubic area." However, neither Dost nor Villard have direct relevance to the issues that we must decide. Both cases were child pornography cases and, as Villard properly held, the test for child pornography differs dramatically from the Miller test for obscenity. See Villard, 885 F.2d at 120, 122 (noting that "[t]he test for child pornography is separate from the obscenity standard enunciated in Miller" and that "an exhibition of the genitals

_____

6. In United States v. Dost, the District Court for the Southern District of
California stated:

    in determining whether a visual depiction of a minor constitutes a
    "lascivious exhibition of the genitals or pubic area" under [18 U.S.C.]
    S 2255(2)(E), the trier of fact should look to the following factors,
    among any others that may be relevant in the particular case:

    1) whether the focal point of the visual depiction is on the child's
    genitalia or pubic area;

    2) whether the setting of the visual depiction is sexually suggestive,
    i.e., in a place or pose generally associated with sexual activity;

    3) whether the child is depicted in an unnatural pose, or in
    inappropriate attire, considering the age of the child;

    4) whether the child is fully or partially clothed, or nude;

    5) whether the visual depiction suggests sexual coyness or a
    willingness to engage in sexual activity;

    6) whether the visual depiction is intended or designed to elicit a
    sexual response in the viewer.

636 F. Supp. at 832.

need not meet the standard for obscenity in order to be considered lascivious [in the child pornography context]"). This being so, we will examine part (b) of the Miller test without reference to the Dost factors.

We will first consider, as did the District Court, whether any of the photographs in the magazines depict a"lewd exhibition of the genitals."7 In deciding this issue, it is helpful to consider the definitions of the terms"exhibition" and lewd," neither of which are defined in Miller or in the New Jersey obscenity statute. Webster's Third New International Dictionary defines "exhibition" as "an act or instance of showing, evincing, or showing off." The dictionary defines the term "lewd" as "sexually unchaste or licentious," "suggestive of or tending to moral looseness," and "inciting to sensual desire or imagination."

Initially, we must point out that many of the photographs in the magazines do not depict genitalia at all. There are many photographs of nude women and girls, and several of these photographs show the subjects' pubic areas, but none of the photographs of females, no matter their age, show their genitalia. Several of the photographs of boys, on the other hand, do show their genitals. However, though one can see boys' genitals in some of the photographs, they are neither being "exhibited" nor "shown off." The fact that their genitals are visible is incidental to their being nude, but it is not the focal point of any of the photographs.

Moreover, in our opinion, even a most conservative, straight-laced, and puritanical viewer of the photographs could not responsibly claim that the photographs are"lewd" or that they give the impression that the subjects are "sexually unchaste or licentious." It is true that the subjects in some of the photographs are posed for the camera, but they are not posed in a way "suggestive of moral looseness." All of the photographs are of smiling, happy, and playful subjects, and none can be deemed lewd by any standard. The magazines just do not depict"lewd exhibition[s] of the genitals."

_____

7. This is the only category named by the Court in Miller and by the New Jersey legislature in N.J.S.A. S 2C:34-2(a)(1)(a) into which the magazines may fall.

13

Nor do we conclude that the magazines "depict or describe patently offensive `hard core' sexual conduct." Miller, 413 U.S. 15, 27 (1973). As discussed above, the photographs in the magazines show people involved in a variety of outdoor activities, all of which are natural and expected for healthy and active children, teenagers, and adults. The only unusual aspect of the photographs is that almost all of the subjects are nude. However, as the Supreme Court observed in Jenkins, "nudity alone is not enough to make material legally obscene under the Miller standards." 418 U.S. 153, 161 (1974). In these magazines, "nudity alone" is all there is to even suggest that the materials are obscene. As such, the magazines fall far outside the zone of " `hard core' sexual conduct" that may constitutionally be found to be "patently offensive."

Our holding that the magazines do not depict patently offensive sexual conduct is reinforced by a comparison of the photographs in the seized magazines to the photographs by David Hamilton which appear in his volume, Age of Innocence and to the photographs which appear in Radiant Identities, Photographs by Jock Sturges. The Government does not claim that either Age of Innocence or Radiant Identities is obscene. Indeed, the parties stipulated that those volumes are regularly available for purchase at bookstores in New Jersey.

Hamilton's photographs depict pubescent girls, most of whom either have their breasts exposed or are fully nude. No photographs of male subjects appear in his works. Several aspects of these photographs make them sexually provocative: the majority of the photographs are in soft focus and the girls are often staring into the camera, unsmiling, with a sultry look; many of the photographs reveal girls in the process of taking off lingerie or other articles of clothing; some photographs are of nude or partially nude girls lying on beds; in some of the photographs, the girls are looking at their bodies in mirrors; some girls are lying or standing with their arms over their heads and their backs arched; in some photographs, the girls are touching their own breasts or

14

sexual organs; and a few of the photographs show two nude or partially nude girls kissing.8

By contrast, the tone and situation of the photographs in the instant magazines are entirely non-sexual, and the photographs contain none of the sexually provocative elements that are present in Hamilton's photographs. None of the subjects are on beds or undressing or touching their bodies in a sexual way. The magazines instead consist of brightly colored photographs of nude children, teenagers, or adults playing or smiling and posing for the camera. Accordingly, the photographs in the magazines can neither be said to be depictions of lewd exhibitions of the genitals or to be patently offensive in any other way. The District Court erred in so holding.

Our conclusion that the magazines are not obscene under part (b) of the Miller test is further bolstered by the inability of the Government to produce for us at oral argument any photograph or illustration in any of the exhibits that would be held under Miller to be obscene. Indeed, under persistent questioning by the panel, the Government called to our attention only one series of illustrations (not photographs), which illustrations would certainly be deemed harmless if they appeared in Good Housekeeping or a similar popularly distributed magazine.

C.

The final prong of the Miller test is whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. The District Court found that no evidence in the record supported "a finding that a reasonable person would find serious artistic or other value in the photographs depicted in the materials." (Dist. Ct. Op. at 19–20.) Alessandra's Smile argues on appeal that the magazines do have value because "[i]n places w[h]ere

_____

8. The photographs in Radiant Identities also show partially and fully nude children and adolescents, but contain none of the elements that make Hamilton's photographs sexually suggestive. Instead, they are similar to the photographs in the seized magazines and cannot be said to depict patently offensive sexual conduct.

15

legislatures or governments may wish to curtail social public nudity on designated beaches, photographs provide the best `case' that the nudism and naturism consist of normal activities engaged in by normal people." (Appellant's Brief, at 51.) We agree.

In expanding upon part (c) of the test in Miller , the Supreme Court explained:

> The First Amendment protects works which, taken as a whole, have serious literary, artistic, political, or scientific value, regardless of whether the government or a majority of the people approve of the ideas these works represent. "The protection given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people."

Miller, 413 U.S. 15, 34-35 (1973) (internal citations omitted).

These magazines qualify for First Amendment protection because of their political value. The term "political" which we employ here is broad enough to encompass that which might tend to bring about "political and social changes." Nudists are members of an alternative community, and the magazines champion nudists' alternative lifestyle, which lifestyle the nudist community may feel is in danger of being curtailed by government regulation. It is true that the political value of these magazines is not as immediately evident as the political value of Naturally, which contains articles about the legal status of public nudity around the world and actively advocates for unregulated nudism. This is so particularly since the text of the seized magazines is not before us. See n.3, supra. However, publications dedicated to presenting a visual depiction of an alternative lifestyle, a depiction with a decidedly Utopianflavor, have political value similar to the political value of articles criticizing government regulation of that and other lifestyles.

Just as we have held that the District Court erred in its findings and conclusions respecting parts (a) and (b) of the Miller test, we hold that the District Court also erred in holding that the magazines lacked serious political value.

16

IV.

Having held that the seized magazines are not obscene when tested by the Miller three-pronged standard, we will reverse the District Court's order of December 30, 1999 and direct the District Court to enter judgment for Alessandra's Smile and to take all necessary steps to restore the seized magazines to Alessandra's Smile.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17