**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1585
_____


IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS CONCUSSION INJURY
LITIGATION


YVONNE SAGAPOLUTELE; MARGRIT DYKO; ANDRE HOWARD; DONNA
MARTIN; RHONDA DUNCAN; LENORE STEHOUWER; NINA HUNTER;
HOLLY OLIVER; MINDY STUBBS; GARY SCHUH; RONA TAYLOR; LISA
CHAMBERLIN; GWENDOLYN DANIELS; WANDA CAYOLLE-PAYNE; JOHN
H. BAKER, III; ELLEN MORIN; SEXTON HOLMES; AND ELLA MCGILL,

Appellants

_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:12-md-02323)
District Judge: Honorable Anita B. Brody
_____

Argued on January 17, 2025

Before: PHIPPS, FREEMAN, and CHUNG, *Circuit Judges*

(Opinion filed: February 20, 2025)

David J. Campbell       [ARGUED]
Thompson & Horton
8300 N. MoPac Expressway
Suite 220
Austin, TX 78759
     *Counsel for Appellants*

Lynn B. Bayard
Bruce A. Birenboim
Brad S. Karp
Kannon K. Shanmugam    [ARGUED]
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
    *Counsel for Appellees*

_____

OPINION[*]

_____

FREEMAN, *Circuit Judge*.

The representative claimants of eighteen retired NFL players sought compensation under the NFL Concussion Settlement Agreement. They asserted that the retired players had been diagnosed with Death with Chronic Traumatic Encephalopathy ("Death with CTE"). The Claims Administrator denied their claims, the Special Master affirmed that decision, and the District Court denied the claimants' objections. We will affirm the District Court's order.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**I**[1]

Under the approved final Settlement Agreement for this class action, retired NFL players or their representative claimants may receive compensation if the retired players have certain qualifying diagnoses. *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 423–24 (3d Cir. 2016) ("*NFL 2016*"). One such diagnosis is Death with CTE. The Settlement Agreement describes this as "a post-mortem diagnosis of CTE made by a board-certified neuropathologist." App. 1835.

In February 2019, eighteen representative claimants sought compensation based on diagnoses of Death with CTE. The claimants filed materially identical two-page letters from a board-certified neuropathologist, Dr. Ronald Hamilton. The letters were undated. In each letter, Dr. Hamilton stated the number of seasons the retired player had played in the NFL, provided a summary of CTE research, and opined "that it is more likely than not" that the retired player had CTE on his date of death. App. 2453–54. Dr. Hamilton did not examine the retired players' brain tissue to render these diagnoses.

The Claims Administrator denied each claim for lack of evidence that Dr. Hamilton conducted a brain-tissue examination to confirm his CTE diagnosis. The claimants appealed to the Special Master, who affirmed the denials because of the lack of

---

[1] Because we write primarily for the parties, we recite only the facts necessary to our decision.

3

brain-tissue examinations.[2]  The claimants objected to the Special Master's rulings, and the District Court denied the objections in a summary order.

The District Court later issued an explanation for its ruling.  It relied on two sources of information to conclude that Death with CTE can be properly diagnosed only after a review of brain tissue.  First, it looked to the language of the Settlement Agreement.  It addressed two terms: "neuropathologist" and "post-mortem."  It noted that a neuropathologist is a doctor who specializes in studying cells and tissue samples under a microscope, and a neuropathologist can only examine a retired player's brain tissue after the player's death.  Second, it looked to two prior judicial opinions addressing the Settlement Agreement.  Both opinions addressed the science underlying a Death with CTE diagnosis.  In the District Court's 2015 opinion granting final approval to the Settlement Agreement, it wrote that "no one can conclusively say that someone had CTE until a scientist looks at sections of that person's brain under a microscope to see if abnormally phosphorylated tau protein . . . is present, and if so whether it is present in a reportedly unique pattern."  *In re Nat'l Football League Players Concussion Inj. Litig.*, 307 F.R.D. 351, 397 (E.D. Pa. 2015).  And in this Court's 2016 opinion affirming the final approval, we made similar observations.  *See NFL 2016*, 821 F.3d at 421–22 (noting that "CTE involves the build-up of 'tau protein' in the brain"; that "it is only diagnosable post-mortem"; and that "diagnosis requires examining sections of a person's brain under

---

[2] The Special Master also affirmed the Claims Administrator's denial of the claims on a second ground: that the claims were untimely.  The District Court did not reach that issue, and the claimants did not address it their appeal to us.

4

a microscope to see if abnormal tau proteins are present and, if so, whether they occur in the unique pattern associated with CTE"). Based on all this, the District Court concluded that the claims were properly denied for lack of brain-tissue examinations.

The claimants timely appealed.

**II**[3]

The Settlement Agreement is a contract subject to the principles of contract interpretation. *Rainbow v. Swisher*, 527 N.E.2d 258, 259 (N.Y. 1988); App. 1820 (selecting New York state law to govern the interpretation of the Settlement Agreement). When a contract is "clear, complete and subject to only one reasonable interpretation" (i.e., when the contract is unambiguous), it must be enforced according to the plain meaning of its language without reference to extrinsic evidence. *Brad H. v. City of New York*, 951 N.E.2d 743, 746 (N.Y. 2011); *Rainbow*, 527 N.E.2d at 259. However, when a contract is susceptible to more than one reasonable interpretation (i.e., when the contract is ambiguous), courts may consider extrinsic evidence. *Brad H.*, 951 N.E.2d at 746.

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332(d). We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's interpretation of the Settlement Agreement's terms for clear error, and we apply plenary review to its construction of the Settlement Agreement. *Nat'l Football League Players' Concussion Inj. Litig.*, 923 F.3d 96, 107 n.8 (3d Cir. 2019). Under the clear error standard, we will not interfere with the District Court's decision unless, after reviewing the evidence, we are "left with a definite and firm conviction that a mistake has been committed." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000) (quoting *United States v. Various Articles of Merchandise*, 230 F.3d 649, 655 (3d Cir. 2000)).

5

The District Court treated the Settlement Agreement as ambiguous and considered extrinsic evidence (two judicial opinions referring to scientific information) when it interpreted the Settlement Agreement's requirement of a Qualifying Diagnosis of Death with CTE. We need not resolve whether the Settlement Agreement is ambiguous or not because, either way, we will affirm the District Court's order. To the extent that the Settlement Agreement is unambiguous, its terms—read together and in context—mean that a Death with CTE diagnosis can be made only after examining brain tissue under a microscope. But even if we were to conclude that the Settlement Agreement is ambiguous, the District Court's reading of the scientific sources was reasonable.[4]

\* \* \*

For the foregoing reasons, we will affirm the District Court's order denying the claimants' objections.[5]

---

[4] In their appellate brief, the claimants argued that the District Court's interpretation of the Settlement Agreement conflicts with their due process rights as absent class members. Those due process arguments do not sway our conclusion that the District Court properly denied these claims for compensation. Further, as claimants acknowledged at oral argument, any independent due process claim is beyond the scope of this appeal.

[5] Judge Chung joins in the judgment. She would conclude that the contract unambiguously does not require a particular method of diagnosing Death with CTE. However, she would still affirm the District Court's order because the Settlement Agreement requires that a diagnosis of Death with CTE be obtained within, at the latest, 270 days of final approval of the Settlement Agreement. This effectively requires a brain examination, as that was the only way to diagnose Death with CTE at the relevant time. *See NFL 2016*, 821 F.3d at 421–22; *In re Nat'l Football League Players Concussion Inj. Litig.*, 307 F.R.D. at 397.