PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2632
_____

UNITED STATES OF AMERICA

v.

MARK ERIC ICKER,
                    Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 3-19-cr-00338-001)
District Judge: Honorable Malachy E. Mannion
_____

Argued: March 24, 2021
_____

Before: HARDIMAN, GREENAWAY, JR., and BIBAS,
*Circuit Judges*.

(Opinion filed: September 14, 2021)

Heidi R. Freese
Frederick W. Ulrich [*ARGUED*]

Tammy L. Taylor
Office of Federal Public Defender
100 Chestnut Street
Suite 306
Harrisburg, PA 17101

    *Counsel for Appellant*

David J. Freed
Stephen R. Cerutti, II
Office of United States Attorney
Middle District of Pennsylvania
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

Michelle L. Olshefski
Jeffery St. John [*ARGUED*]
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

    *Counsel for Appellees*

_____

OPINION

_____

GREENAWAY, JR., *Circuit Judge*.

As a police officer, Mark Icker used his badge to harass, grope, and force oral sex on several women. Icker pled guilty only to depriving individuals of their civil rights under color of law, pursuant to 18 U.S.C. § 242. His convictions under § 242 are not "sex offenses" under the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901 *et seq*. Nevertheless, the District Court mandated that, as a condition of his supervised release term, Icker "comply with the requirements of [SORNA] as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where [he] reside[s], work[s], [is] a student, or [was] convicted of a qualifying offense." App. 4. But a district court cannot discretionarily order a defendant who is not convicted of any "sex offense" under SORNA to register under the statute. Any imposition of SORNA registration requirements on such a defendant constitutes plain error. This issue is the crux of this appeal.

We first determine that because Icker was not convicted of any sex offenses, and because the record shows he was not given notice of any potential SORNA registration requirements, we will not enforce his appellate waiver as he did not enter into it knowingly and voluntarily. Reaching the merits of Icker's claims, we hold that the District Court plainly erred by mandating that Icker comply with SORNA requirements. Icker was not convicted of any "sex offense" under SORNA. Because SORNA does not extend to other offenses, Icker cannot be subject to its terms. To the extent the Government argues that because the District Court imposed Icker's registration "as directed" by a third party, any delegation of Icker's status as a "sex offender" to a third party is an improper delegation of Article III powers. Therefore, we will vacate the judgment of conviction and remand with

3

directions to vacate the SORNA conditions of Icker's supervised release.

## I.     BACKGROUND

### A.     Factual Background

From March 2018 until his termination, Icker worked as a part-time uniformed police officer in Luzerne and Lackawanna counties in Pennsylvania. During this time, and in his capacity as a police officer, Icker pulled over two women—S.R., age 22, and R.V., age 32—while they were driving alone during late night hours.

In both instances, Icker pulled over and detained the women, claiming that they had violated vehicle codes and appeared intoxicated or that he could smell marijuana. Icker then handcuffed the women and searched their cars. During the search of the cars, Icker claimed to find more incriminating evidence—in one instance a pill bottle and in another, marijuana.

Icker confronted both women with the items he found in their cars and warned them that they would face consequences as a result of further charges (both women had previous involvement with the criminal justice system). He then advised both women that those charges could put them in violation of their supervision or bond, and that they could face imprisonment.

Icker later asked each woman "How can you help me help you?" or "What can you do for me to help you?" as a way to ask for oral sex. PSR ¶ 5. Afterwards, in each instance, Icker drove the victim's car to a location out of view and

4

transported the victim in his police cruiser to a different location—either a park or the police station bathroom. Icker coerced both women into performing oral sex on him.

In addition to these two instances, Icker groped or harassed three other women, using his authority as a police officer.

## B. Procedural Background

From December 2018 through April 2019, authorities brought various charges against Icker. Icker later entered into a written plea agreement (the "Plea Agreement") under which he agreed to plead guilty to two counts of depriving R.V. and S.R. of their civil right to bodily integrity under 18 U.S.C. § 242. The Plea Agreement included several sentencing guidelines references, including that the parties jointly recommended a 144-month term of imprisonment. The Plea Agreement also included several special conditions of supervised release. There was no reference to SORNA registration as a special condition in the Plea Agreement.

As part of the Plea Agreement, Icker also waived his right to direct appeal:

> 28. Appeal waiver - Direct. The defendant is aware that Title 28, United States Code, § 1291 affords a defendant the right to appeal a judgment of conviction and sentence; and that Title 18, United States Code, § 3742(a) affords a defendant the right to appeal the sentence imposed. Acknowledging all of this, the defendant knowingly waives the right to appeal the conviction and sentence. This waiver

5

includes any and all possible grounds for appeal, whether constitutional or non-constitutional, including, but not limited to, the manner in which that sentence was determined in light of *United States v. Booker*, 543 U.S. 220 (2005). The defendant further acknowledges that this appeal waiver is binding only upon the defendant and that the United States retains its right to appeal in this case.

App. 46.

The Government filed a two-count information in the United States District Court for the Middle District of Pennsylvania against Icker. Icker then appeared at a sentencing hearing before the District Court, which rejected the agreed upon 144-month term of imprisonment and instead sentenced Icker to a 180-month term. At the sentencing hearing, Icker did not object to the presentence report, which listed SORNA registration as a condition of release, despite the District Court's invitation to do so. The District Court did not mention SORNA during the sentencing hearing, but the Court referenced SORNA twice in its judgment of conviction. First, under "Mandatory Conditions," the District Court checked the following box:

You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901*, et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. (*check if applicable*)[.]

*Id.* at 4.

Second, the "Additional Supervised Release Terms," included the following:

> You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense[.]

*Id.* at 6.[1]

Icker then filed this timely appeal.

## II.     JURISDICTION

The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III.     APPELLATE WAIVER

Although Icker signed an appellate waiver, he contends that the waiver does not preclude this Court's review.[2]  The Government argues that the appellate waiver applies given that

---

[1] The Sex Offender Registration and Notification Act is now located at 34 U.S.C. § 20901.

[2] Icker's waiver explicitly covered "the right to appeal the conviction and *sentence*" including "*any and all possible grounds for appeal*, whether constitutional or non-constitutional[.]"  App. 46 (emphasis added).

its broad language reaches the conditions of supervised release. Additionally, the Government contends that the waiver was entered into knowingly and voluntarily given the language of the waiver and the District Court's colloquy with Icker. Our review of the validity and scope of appellate waivers is plenary. *United States v. Jackson*, 523 F.3d 234, 237 (3d Cir. 2008).

Waivers of appeal are generally permissible regardless of the merits of the claim, and courts must construe them strictly. *United States v. Khattak*, 273 F.3d 557, 558, 561–62 (3d Cir. 2001). We will generally decline to entertain an appeal and will enforce an appellate waiver when "(1) . . . the issues [the defendant] pursues on appeal fall within the scope of his appellate waiver and (2) . . . he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." *United States v. Wilson*, 707 F.3d 412, 414 (3d Cir. 2013) (quoting *United States v. Dahmen*, 675 F.3d 244, 249 (3d Cir. 2012)) (alteration in original).

Thus, to determine whether an appellate waiver was knowingly and voluntarily agreed to, we must look to the context surrounding the defendant's acceptance of the waiver. *See Khattak*, 273 F.3d at 563. Here, Icker did not knowingly and voluntarily agree to the waiver of this appeal. Thus, we decline to enforce the waiver.[3]

---

[3] Even if Icker's appellate waiver was entered into knowingly and voluntarily, and the scope of the waiver covered this appeal, enforcing this waiver would be a miscarriage of justice. *See Khattak*, 273 F.3d at 562. Here (1) the error was clear, as discussed *infra*, (2) the error is grave, (3) the error presents a legal question, not a fact question, (4) the error creates a

First, Icker's Plea Agreement sets forth many special conditions of supervised release but fails to make *any* reference to SORNA registration. Because the Plea Agreement never mentioned any SORNA requirements, and because Icker did not plead guilty to any "sex offense" under SORNA as part of that agreement, he had no reason to know that he would be subject to SORNA. Second, while the District Court addressed the appellate waiver with Icker during the plea colloquy, it did so without specific reference to SORNA.[4]

Thus, neither the terms of the Plea Agreement nor the in-person colloquy mentioned or discussed a SORNA registration condition. Moreover, this void in information and notice establishes that Icker could not have understood that he was waiving his right to appeal a SORNA registration condition. The fact that Icker admitted to sexual conduct is not

---

burdensome obligation for Icker, and (5) the impact to the Government in correcting this error would be minimal. *See id.* at 563. Our case law favors reaching the merits.

[4] During the plea colloquy, the District Court asked:

> Do you also understand that under circumstances normally you and/or the government would have the right to appeal any sentence that is imposed in the case, but as part of your plea agreement in this case, you have agreed to waive or give up your right to appeal the sentence? Do you understand that?

App. 57. Icker affirmed that he understood. This was the extent of the District Court's discussion of the waiver with Icker before he entered his plea. The District Court did not discuss the breadth, scope, or covered conditions of his supervised release.

enough for him to be on notice of potential SORNA requirements when his Plea Agreement and plea colloquy did not mention such additional conditions, and he had not been convicted of any sex offenses under SORNA. As a result, Icker's appellate waiver does not apply on these facts, and we will proceed to the merits of his appeal.

## IV.    SORNA REGISTRATION

### A.    SORNA

The United States Congress enacted the SORNA as Title I of the Adam Walsh Child Protection and Safety Act of 2006. Congress passed SORNA "to protect the public from sex offenders and offenders against children" by "establish[ing] a comprehensive national system for the registration of [sex] offenders." 34 U.S.C. § 20901. SORNA "reflects Congress' awareness that pre-Act registration law consisted of a patchwork of federal and 50 individual state registration systems." *Reynolds v. United States*, 565 U.S. 432, 435 (2012).

Consistent with its goals, SORNA registration requirements apply to state and federal "sex offender[s]." *See* 34 U.S.C. §§ 20911, 20913. SORNA defines "sex offender" to mean "an individual who [has been] convicted of a sex offense." *Id.* § 20911(1). With certain exceptions not applicable here, SORNA defines "sex offense" to include:

> (i) a criminal offense that has an element involving a sexual act or sexual contact with another;
> (ii) a criminal offense that is a specified offense against a minor;

10

(iii) a Federal offense (including an offense prosecuted under section 1152 or 1153 of title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of title 18;

(iv) a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. 951 note); or

(v) an attempt or conspiracy to commit an offense described in clauses (i) through (iv).

*Id.* at § 20911(5)(A).

SORNA specifies that all sex offenders "shall register, and keep the registration current, in each jurisdiction where the offender" lives, works, or attends school. *Id.* § 20913(a). When an offender changes his name, residence, employment, or student status, within three business days the offender must appear in person in at least one jurisdiction where the offender lives, works, or is a student to notify that jurisdiction of the change in registration information. *Id.* § 20913(c). SORNA also requires that the jurisdiction receiving this information immediately provide it to all other jurisdictions in which the offender must register to achieve a comprehensive national registry. *Id.* Failure to comply with SORNA can lead to criminal penalties. *Id*. § 20913(e); *see* 18 U.S.C. § 2250(a).

## B.     The District Court Committed Plain Error

We review a district court's decision to impose a condition of supervised release for abuse of discretion. *United States v. Loy*, 237 F.3d 251, 256 (3d Cir. 2001). When, however, a defendant fails to object to a specific condition at sentencing, as is the case here, we review for plain error.

11

*United States v. Maurer*, 639 F.3d 72, 77 (3d Cir. 2011). The Supreme Court has described a four-part inquiry for plain-error review under Federal Rule of Criminal Procedure 52(b): "[t]here must (1) be an 'error' that (2) is 'plain' and (3) 'affects substantial rights'" of the defendant. *United States v. Williams*, 974 F.3d 320, 340 (3d Cir. 2020) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "If these three conditions are satisfied, then it is within the sound discretion of the court of appeals to correct the forfeited error—but only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation marks omitted) (quoting *Olano*, 507 U.S. at 732).

   a.      *A Defendant Who Is Not Convicted of a Sex Offense Cannot Be Subject to SORNA's Registration Requirements*

Icker's convictions for depriving individuals of their civil rights under color of law, pursuant to 18 U.S.C. § 242, are not "sex offenses" under SORNA.[5] However, the Government

---

[5] During oral argument, the Government asserted that a conviction under 18 U.S.C. § 242 *could be* a sex offense. Given that this conviction is not an enumerated offense under 34 U.S.C. § 20911(5)(A), the criminal offense must be one that "has an element involving a sexual act or sexual contact with another." 34 U.S.C. § 20911(5)(A)(i). Section 242 of Title 18 of the United States Code requires only that, under color of law, Icker willfully deprived a victim of her liberty without due process of law, which includes the right to bodily integrity. 18 U.S.C. § 242; *see United States v. Shaw*, 891 F.3d 441, 446–47 (3d Cir. 2018). The Government asks us to read the statute broadly and assume that because Icker's criminal conduct was, in part, sexual, we should find that his convictions constitute a "sex offense." But to do so would read the statute so broadly

12

argues that because the conduct of Icker's criminal acts is "'reasonably related' to the sexual abuse of women," the District Court did not err by choosing to discretionarily impose SORNA registration requirements. Appellee's Br. 23. We agree with Icker that because he was not convicted of a "sex offense" under SORNA, the District Court cannot impose SORNA requirements. The District Court's imposition here was thus error, and plainly so, because it contradicted the language of the statute and it affected Icker's substantial rights.

A district court lacks the authority to require a defendant to register under SORNA if he or she has not been convicted of a "sex offense," as defined by 34 U.S.C. § 20911(5)(A). The Government maintains that, while SORNA "certainly defines what constitutes a 'sex offense,' nothing in SORNA's statutory scheme limits registration to *only* those convicted of such offenses." Appellee's Letter Br. 2 (emphasis added). Thus, the Government asserts there are instances in which SORNA registration may not be required under the statute, but a sentencing court can find that it is still warranted and can impose SORNA registration requirements at its discretion. We reject this interpretation and application of SORNA.

First, by its terms, SORNA is limited to sex offenses. *See United States v. Brown*, 740 F.3d 145, 147 (3d Cir. 2014) ("Congress was careful to delineate specific circumstances in which a conviction involving sex will not lead to classification as an offender under SORNA."). Here, the District Court plainly erred when it expanded the scope of SORNA, applying

as to include crimes such as battery, which can involve no sexual conduct. Further, such determinations should be left to a jury or fact finder, not assumed to exist based on the facts on appeal.

13

it to a defendant who was never convicted of a "sex offense" as defined by SORNA itself, as the language of the statute is clear as to its limited scope.

As discussed, SORNA defines "sex offense" to include specific enumerated offenses or "a criminal offense that has an element involving a sexual act or sexual contact with another." 34 U.S.C. § 20911(5)(A). Icker was convicted of depriving individuals of their civil rights under color of law in violation of 18 U.S.C. § 242. This crime does not fall within the scope of § 20911(5)(A), which clearly enumerates crimes or requires that an element of the crime involve sexual conduct.

Second, while a district court has broad discretion to impose conditions of supervised release pursuant to 18 U.S.C. § 3583, this power is limited by statute, and SORNA registration is specifically limited to those *required* by the statute to comply. Pursuant to § 3583, in exercising its discretion, the district court's conditions must (1) be "reasonably related" to the sentencing factors of § 3553, (2) "involve[] no greater deprivation of liberty than is reasonably necessary for [those] purposes," and (3) be "consistent with any pertinent policy statements issued by the Sentencing Commission."[6] 18 U.S.C. § 3583(d)(1)–(3).

---

[6] Nothing prevents a district court from using its authority to impose other conditions that would also likely be given to a sex offender, such as counselling, therapy, or mental health evaluations. *See, e.g.*, *Wilson*, 707 F.3d at 416 (affirming a district court's condition requiring a mental health assessment, and, if necessary, a mental health treatment program, for a defendant who pleaded guilty to drug charges).

Section 3583(d), however, makes two explicit references to SORNA: that (1) "[t]he court shall order, as an explicit condition of supervised release *for a person required to register* under [SORNA], that the person comply with the requirements of that Act," and that (2) "the court may order, as an explicit condition of supervised release *for a person who is a felon and required to register* under [SORNA], that the person submit" his or her person, residence, and property to searches by various officials. *Id.* at. § 3583(d) (emphasis added). This language carries over to other sections of the statute—first, concerning when "a defendant required to register under [SORNA]" commits certain crimes, *id.* at § 3583(k), and second, concerning whether the court may impose additional conditions "if [the defendant is] *required to register* under [SORNA]," *id.* at § 3563(b)(23) (emphasis added).

To read § 3583 to also allow district courts to impose SORNA compliance on persons <u>*not required to register*</u> by the terms of SORNA itself would make these references superfluous. *See United States v. Cooper*, 396 F.3d 308, 312 (3d Cir. 2005) ("It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous.").

It is not within a district court's power to broaden a statute and its application, but even if it could do so, SORNA *could not* be practically imposed on a person who has not been convicted of a sex offense. Individuals required to register for SORNA are subject to its requirements for a term of years or for life based on the "tier" that their offense falls within. 34 U.S.C. § 20915(a) (noting a tier I sex offender must register for fifteen years, a tier II sex offender must register for twenty-five

15

years, and a tier III sex offender must register for life). If there is no "sex offense" to tie the registration to, the text of SORNA does not dictate the duration of required registration. Thus, if SORNA were allowed to be imposed on non-sex offenders, how long must they register for? The answer is unclear. In following the Government's argument, a defendant convicted of a lesser offense could ostensibly be given lifetime registration requirements despite SORNA's specific intent to limit registration based on the severity of the offense. *See id.* Thus, the plain language of SORNA does not anticipate any discretionary application of its requirements.

We therefore conclude that a discretionary imposition of SORNA on non-sex offenders is plainly erroneous.

### b. *The Judgment of Conviction Required Registration*

The Government also maintains that the District Court did not *mandate* a SORNA registration requirement, and thus Icker cannot appeal the District Court's judgment of conviction. According to the Government, the District Court did "not simply say 'You must register as a sex offender pursuant to SORNA'" but instead "impose[d] a conditional directive to comply with SORNA only '*as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency.*'" Appellee's Br. 19 (emphasis in original). The Government asserts that because registration under SORNA was conditional on a determination by third parties, this Court has no basis to review. We disagree.

The governing statutory language provides that:

The court shall order, as an explicit condition of supervised release *for a person required to*

16

*register* under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act.

18 U.S.C. § 3583(d) (emphasis added). The plain language of the statute requires that a court determine whether the defendant has been convicted of "sex offense" as defined in 34 U.S.C. § 20911(5)(A), which is appropriate because the question of whether an offense is a "sex offense" is one of law. *See Brown*, 740 F.3d at 149.

Further, the language of the judgment of conviction states that Icker "*must* comply with the requirements of [SORNA] as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense." App. 4 (emphasis added); *see also* App. 6. While it is true that these third parties would dictate the actual procedures Icker must follow, the District Court still is not conditionally requiring him to comply with SORNA.

If we were to take the Government's view of "must comply as directed," we would be impermissibly placing the legal analysis of determining what constitutes a "sex offense" with the probation office, the Bureau of Prisons, or state agencies, which would establish an impermissible delegation of Article III powers. *See United States v. Pruden*, 398 F.3d 241, 251 (3d Cir. 2005) (explaining that it is "'an impermissible delegation of judicial authority'" to allow the probation office to determine whether a defendant is required to undergo mental health intervention, but it is permissible to delegate to the probation office "'the details with respect to the selection and schedule of the program'" (quoting *United States*

*v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001)); *Loy*, 237 F.3d at 266 (noting that a "sentencing court may not wholesaledly 'abdicate[] its judicial responsibility' for setting the conditions of release" by having the probation office determine what the word "pornography" entails) (quoting *United States v. Mohammad*, 53 F.3d 1426, 1438 (7th Cir. 1995)) (alteration in original). It is not permissible to give a "probation officer an unfettered power of interpretation." *Loy*, 237 F.3d at 266.

Accepting the Government's position would be an extraordinary delegation of power to probation offices, who are in the business of executing and implementing judicial orders, not analyzing, evaluating and making legal determinations on questions of law, and other such parties.[7] Because it is beyond the power of Article III courts to delegate the duty of determining who is a sex offender to the probation office, Bureau of Prisons or state agency, we find this argument unavailing.

## V.  CONCLUSION

For these reasons, we will vacate the District Court's judgment of conviction and remand with directions to modify the District Court's Judgment to remove the SORNA-related conditions.

---

[7] The Government's position is further weakened when testing its practicality. The Government posits that Icker should wait to appeal this point until after the probation office, Bureau of Prisons, or a state agency orders compliance with SORNA. Certainly waiver would be a difficult, if not insurmountable, barrier to relief at that point. Not surprisingly, the Government chose not to opine on this point.

18